**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffrey Stuart,<br><br>    Plaintiff,<br><br>v.<br><br>BOKF NA dba Bank of Arizona, et al.,<br><br>    Defendants. | No. CV-18-04428-PHX-DLR<br><br>**ORDER** |

Plaintiff Jeffrey Stuart brings this action against Defendants BOKF, NA dba Bank of Arizona ("BOKF") and Experian Information Solutions, Incorporated ("Experian"), alleging violations of the Fair Credit Reporting Act ("FCRA"). (Doc. 42.) Before the Court is BOKF's motion to dismiss for failure to state a claim. (Doc. 49.) The motion is fully briefed.[1] For the reasons stated below, BOKF's motion is denied.

**I. Background**

Plaintiff purchased a home with a mortgage from BOKF in March 2008. (Doc. 42 ¶ 8.) In early 2013, Plaintiff's home was sold in a trustee sale. (¶ 9.) More than five years later, Plaintiff's application for a mortgage on another property was denied. (¶ 11.) Plaintiff was notified that his application was denied because of issues with his credit as reported by Experian, a credit reporting agency ("CRA"). (¶ 12.) In particular, Experian was reporting that Plaintiff's BOKF mortgage had a balance owed of $625,642.00. (¶ 14.)

---

[1] Plaintiff requested oral argument, but after reviewing the parties' briefing, the Court finds oral argument unnecessary. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

On October 23, 2018, Plaintiff mailed a dispute letter to Experian, requesting that the outstanding balance be corrected to reflect a zero balance. (¶ 15.) Plaintiff contends that he was not responsible for any remaining balance on the BOKF mortgage after the trustee sale because Arizona is an anti-deficiency state. (¶ 10.) Experian received Plaintiff's letter and forwarded it to BOKF. (¶¶ 16, 17.)

On November 9, 2018, Experian responded to Plaintiff's dispute letter. (¶ 18.) Experian corrected its report to reflect a zero balance for Plaintiff's BOKF mortgage but added an "F" under his payment history indicating that Plaintiff had a foreclosure in November 2018. (¶¶ 19, 20.) Plaintiff did not have a foreclosure in November 2018. (¶ 20.)

Plaintiff filed suit in December 2018. Thereafter, Plaintiff amended his complaint, alleging that BOKF failed to "fully and properly investigate" Plaintiff's dispute in violation of 15 U.S.C. § 1681s-2(b). (¶ 32.)

**II. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint that is not based on a cognizable legal theory or that lacks sufficient facts to state a plausible claim under an otherwise cognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To avoid dismissal the complaint must plead sufficient facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**III. Discussion**

"Congress enacted the [FCRA] in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (internal quotation and citation omitted). "As an important means to this end, the Act sought to make '[CRAs]

exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy.'" *Id.* (alteration in original) (quoting 15 U.S.C. § 1681(a)(4)).

In relation to the duties of CRAs in the event a consumer disputes reported information as inaccurate, Section 1681i provides:

> [T]he [CRA] shall . . . conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . , before the end of the 30-day period beginning on the date on which the [CRA] receives the [consumer's dispute].

15 U.S.C. § 1681i(a)(1)(A). As part of a reasonable investigation, the FCRA requires that the CRA "provide notification of the dispute to any [furnisher that] provided information in dispute[.]" *Id.* § 1681i(a)(2)(A). The notice must contain "all relevant information regarding the dispute that the [CRA] has received from the consumer . . . ." *Id.* However, a consumer must trigger the CRA's duty to reinvestigate by "notify[ing] the [CRA] of the purported reporting error." *Herisko v. Bank of Am.*, 367 F. App'x 793, 794 (9th Cir. 2010) (requiring the consumer's notice to identify each challenged inaccuracy to trigger a CRA's duty under FCRA).

The FCRA also imposes duties on furnishers, like BOKF, once a consumer disputes the accuracy of reported information. *Id.* § 1681s-2. Section 1681s-2 requires a furnisher to take the following actions after receiving notice of the consumer dispute:

> (A) conduct an investigation with respect to the disputed information;
> 
> (B) review all relevant information provided by the [CRA] . . . ;
> 
> (C) report the results of the investigation to the [CRA];
> 
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the [furnisher provided] the information and that compile and maintain files on consumers on a nationwide basis; and
> 
> (E) if an item of information disputed by a consumer is found

- 3 -

> to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . , for purposes of reporting to a [CRA] only, as appropriate, based on the results of the reinvestigation promptly [modify, delete, or permanently block the reporting of that item of information].

*Id.* § 1681s-2(b)(1)(A)-(E). A furnisher may be held liable for violating 15 U.S.C. § 1681s-2(b)(1) if it fails to conduct a reasonable investigation after being notified by a CRA of a consumer's dispute. *Gorman*, 584 F.3d at 1157. The question of whether an investigation was reasonable is left to the jury unless "only one conclusion about the conduct's reasonableness is possible." *Id.* (citation and quotation marks omitted). A furnisher may also be held liable if it conducts a reasonable investigation but subsequently declines to "rectify past misreporting and prevent future misreporting of information." *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1108 (9th Cir. 2012). But like the notice required to trigger a CRA's duty, a furnisher's duties under FCRA do not arise until it receives notice of the dispute[.]" *Herisko*, 367 F. App'x at 794.

It is this last requirement that is the basis of BOKF's motion to dismiss. BOKF contends that its duties under the FCRA were never triggered because Plaintiff did not "allege that he provided [] notice to Experian disputing Experian's reporting of the 'F' in his 2018 payment history . . . .." (Doc. 49 at 4.) The Court agrees that "a plaintiff must dispute the accuracy of a given piece of information before []he can state a claim against the furnisher of such information under § 1681s-2(b)." *Lao v. Green Tree Fin. Corp.*, No. ED 11-1307-MWF (DTBx), 2012 WL 12055044, at *4 (C.D. Cal. Oct. 16, 2012). What is less clear, however, is what level of specificity is required to effect a legally cognizable dispute. Although relevant case law is sparse, the Court finds *Lao* persuasive.

In that case, the plaintiff, Jade Lao, alleged that the defendant, Green Tree Financial Services ("Green Tree"), violated § 1681s-2(b). Green Tree, a furnisher under the statute, moved to dismiss the claims, arguing that Lao never provided the requisite notice for three allegedly inaccurate statements. The alleged inaccuracies were: (1) that Lao's date of first delinquency relative to the loan was in February 2007; (2) that Lao's last payment towards the account was in August 2011; and (3) that the status of the Lao's account was designated

closed. *Id.* at *1. Lao admitted "that her dispute letter 'did not *specifically* address' the three allegedly inaccurate statements[.]" *Id.* at *2 (emphasis in original). Instead, her dispute letter stated in relevant part: "I am writing to dispute the following inaccurate information that appears on my credit report . . .. Green Tree is reporting that this debt as a charge off when payments have been made as agreed and on time." *Id.*

Green Tree argued that this ended the court's inquiry. The court disagreed, finding that it could not say, as a matter of law, "that such allegedly inaccurate statements bear no relationship to the disputed accuracy of whether Lao's account was charged off . . . [n]or are these allegedly inaccurate statements [] plainly divergent from the text of Lao's [dispute] letter[.]" *Id.* at *4. The court explained that Green Tree's arguments were premature, opining that:

> the issue of the scope of the notice of a dispute could be decided (1) on summary judgment or adjudication; (2) during the pretrial process; (3) by instructing the jury as a matter of law on what allegedly inaccurate statements could give rise to liability; or, (4) instructing the jury that only an inaccuracy for which the plaintiff has given notice of a dispute can give rise to liability and then letting the jury determine whether Lao in fact gave notice of a dispute of the accuracy of the three statements at issue.

*Id.* The issue could not be resolved without discovery. The court further explained:

> [D]iscovery may demonstrate that the accuracy of [Lao's last payment towards the account was in August 2011] has no connection to the April 2011 "charged off" dispute letter, as chronological logic would seem to imply. However, given Lao's ongoing payments, the facts may show that this alleged inaccuracy is simply part-and-parcel of the same dispute—i.e., Green Tree wrongly reported that the account had been "charged off" and, as part of Green Tree's mistaken understanding of the account status, later reported that Lao's last payment was made in August 2011. To the extent this statement represents a continuation of the same disputed inaccuracy, the law should not compel Lao to send ongoing, never-ending letters with respect to every iteration of Green Tree's error.

*Id.*

Here, Plaintiff admits, as he logically must, that his October 2018 dispute letter did not specifically address the "F" added to his credit report in November 2018. But, much

like in *Lao*, Plaintiff contends that the alleged inaccuracy is part-and-parcel of his October 2018 dispute. (*See, e.g.*, Doc. 56 at 5-6 ("Plaintiff is not suing for a different, undisputed issue; he is suing for the same, disputed issue that BOKF failed to reasonable investigate and . . . a continued inaccurate credit report.").) That is, BOKF wrongly reported that Plaintiff had a deficiency balance and, as part of BOKF's mistaken understanding of the status of Plaintiff's BOKF mortgage, later reported that Plaintiff's BOKF mortgage was foreclosed on in November 2018. Like the court in *Lao*, this Court agrees that absent discovery into, among other things, whether Plaintiff and BOKF perceived the "F" as wholly unrelated to the disputed deficiency balance, dismissal at this stage is premature.[2] Because the Court cannot say as a matter of law that Plaintiff failed to dispute the accuracy of the "F" added in November 2018,

**IT IS ORDERED** that BOKF's motion (Doc. 49) is **DENIED.**

Dated this 26th day of July, 2019.

Douglas L. Rayes
United States District Judge

---

[2] In support of its motion, BOKF relies on a number of cases that fail to "answer[] the question of what level of specificity is required to effect a legally cognizable dispute." *Lao*, 2012 WL 12055044, at *4. Like the court in *Lao*, this Court "regards these cases as instructive but hardly dispositive."

- 6 -